UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BERNADETTE HIGHTOWER, LATERSHIA JONES, GEORGE DEAN, and BRUCE MARK WOODRUFF, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RECEIVABLES PERFORMANCE MANAGEMENT, LLC,<br><br>Defendant. | Case No. 2:22-cv-01683-RSM<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**NOTE ON MOTION CALENDAR: July 17, 2024** |

## I.  INTRODUCTION

Plaintiffs Bernadette Hightower, Latershia Jones, George Dean, and Bruce Mark Woodruff (collectively, "Plaintiffs") submit this Unopposed Motion for Preliminary Approval of Class Action Settlement. Defendant, Receivables Performance Management, LLC ("RPM" or "Defendant") does not oppose certification of the Settlement Class solely for purposes of facilitating the settlement sought to be approved in this motion. Plaintiffs strongly believe the Settlement, which establishes a $5,600,000.00 non-reversionary settlement fund, is fair,

1 reasonable, and adequate, and that the Court should grant preliminary approval and notice

2 should be distributed to Class Members.

3 ## II. STATEMENT OF FACTS

4 This matter concerns a putative class action arising out of a data security incident

5 impacting RPM's server infrastructure that RPM discovered on or about May 12, 2021 (the

6 "Data Incident"). During the Data Incident, Plaintiffs allege that cybercriminals accessed or

7 acquired Plaintiffs' and Class Members' Personally Identifying Information ("PII"), including

8 their Social Security numbers. Plaintiffs further allege that more than 3,700,000 victims had

9 their PII exposed as a result of the Data Incident.[1] RPM later notified impacted individuals that

10 they needed to protect themselves against fraud and identity theft.

11 Plaintiffs filed class action complaints on behalf of all persons whose PII may have

12 been compromised in the Data Incident, alleging claims based on RPM's failure to: (i)

13 adequately protect PII; (ii) warn of its inadequate information security practices; and (iii)

14 effectively monitor its network for security vulnerabilities and incidents (the "Litigation").

15 Plaintiffs allege that RPM failed to comply with industry standards and FTC Guidelines,

16 amounting to negligence and violation of federal and state statutes. Plaintiffs and Class

17 Members allege that they suffered injury as a result of RPM's conduct. These injuries include:

18 (i) the continued and increased risk of identity theft and fraud; (ii) the loss of time to mitigate

19 the risk of identity theft and fraud; (iii) the diminution of value of their PII; and (iv) the future

20 cost of credit and identity theft monitoring.

21

22

23

---

[1] Office of the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/11ca5a7c-b09f-404a-81c6-b683305543a1.shtml (posting of data breach) (last visited July 9, 2024).

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT- 2
Case No. 2:22-cv-01683-RSM

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  RPM denied all of the claims and contentions alleged against it in the Litigation, and it

2  filed a motion to dismiss the Complaint for lack of standing and/or failure to state a claim or,

3  alternatively, to strike the class action allegations from the Complaint. Likewise, Plaintiffs

4  oppose RPM's arguments. However, the parties, with extensive experience in privacy class

5  actions while also recognizing the risks of protracted class litigation, agreed to explore

6  resolution of the claims at issue in this Litigation, ultimately arriving at the Class settlement

7  that is before the Court here. The Settlement provides excellent and timely benefits to the

8  Settlement Class and is fair, reasonable, and adequate and respectfully request that the Court

9  preliminarily approve it.

### III.  PROCEDURAL HISTORY

11      This consolidated class action was initiated on November 28, 2022, when Plaintiff

12  Hightower filed a complaint against RPM arising out of the Data Breach. *See* Dkt. 1.

13  Subsequently, a number of other proposed class actions were filed and later consolidated

14  following a stipulated motion to consolidate. Dkt. 12. The Consolidated Complaint was filed on

15  February 27, 2023 (Dkt. 32) and, following a stipulated motion for leave to file an amended

16  complaint, the Amended Consolidated Complaint was filed on May 4, 2023. Dkt. 42. The

17  Court then set a case schedule and discovery plan. Dkt. 43.

18      The parties then agreed to explore the potential for early resolution of this matter,

19  scheduling mediation before Hon. Wayne Andersen (Ret.) on July 12, 2023. *See* Joint

20  Declaration in Support of Plaintiffs' Motion for Preliminary Approval of Class Action

21  Settlement ("Joint Decl.") ¶ 7. Prior to mediation, Plaintiffs requested, and RPM provided,

22  informal discovery responses that allowed Plaintiffs' counsel to evaluate the strengths and

23  potential weaknesses of their claims. *Id.* ¶ 8. On July 12, 2023, the parties participated in a full

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT- 3
Case No. 2:22-cv-01683-RSM

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

day mediation with Judge Andersen. *Id.* ¶¶ 10–11. Despite the parties' best efforts and hard-fought arms-length negotiations, that mediation did not result in a settlement, although progress was made. *Id.* In the subsequent months, the parties continued their negotiations, extending the time for RPM to respond to the Amended Consolidated Complaint and for certain discovery deadlines so the parties could focus their efforts and resources on potential resolution. *Id.* ¶ 13; Dkt. 47, 50, 52, 54, 56.

In addition, RPM agreed to provide significant documents and information related to its financial condition—including the details of RPM's sale of its assets to a third party in October 2022—to allow Plaintiffs to assess the collectability of any potential judgment in this case. *Id.*, ¶ 13. As set forth in the Declaration of Rebekah A. Smith, CPA, CVA, MAFF, CFF ("Smith Decl."), Plaintiffs engaged a forensic accounting expert to review several categories of documents from RPM, including audited financial statements, internal financial statements, tax returns, insurance policies, correspondence with Attorneys General, and an Asset Purchase Agreement dated October 26, 2022. *See* Smith Decl. ¶¶ 5–7. Based on her review, as of December 31, 2022—and following its asset-only purchase—RPM had no funds to contribute to a settlement in this action (and thus likely would have had no funds to satisfy any judgment), as it owned no assets and had liabilities of over $1 million. *Id.* ¶ 12. Thus Plaintiffs' only avenue for recourse in this case would be RPM's applicable insurance policy. Joint Decl. ¶¶15–16. As that policy would become depleted by RPM's costs (like attorneys' fees) in defending this action, further litigation would have only eroded the amounts potentially available to the Class. *Id.*

Despite these protracted and hard-fought negotiations, by April 2024, the parties had not reached agreement on the terms of a settlement, and RPM moved to dismiss Plaintiffs'

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

claims under Rules 12(b)(1) and 12(b)(6), or, alternatively, to strike the class action allegations from the Complaint pursuant to Rules 12(f) and 23(d)(1)(D). Dkt. 58. Likewise, Plaintiffs oppose RPM's legal arguments. However, shortly thereafter, through the continued efforts of counsel and under the supervision of Judge Andersen, the parties reached agreement on the material terms of the Settlement in response to a mediator's proposal. Joint Decl. ¶ 18.

The parties worked to draft the full Settlement Agreement, negotiating the details of the settlement terms and drafting the exhibits. *Id.* ¶ 20. Additionally, Plaintiffs' counsel solicited and reviewed competitive bids for notice and claims administration. *Id.* ¶ 21. Finally, Plaintiffs' counsel drafted this motion for preliminary approval and the supporting declaration. *Id.* ¶¶ 20–21. The parties' Settlement achieves what Plaintiffs set out to achieve by initiating this Litigation: compensating victims of the Data Incident for their out-of-pocket losses, lost time, and statutory damages, and providing future security for their PII through free credit monitoring.

## IV.   THE SETTLEMENT TERMS

### A.   Proposed Settlement Class

The Proposed Settlement will provide substantial relief for the Settlement Class, which is defined as: "the persons who are identified on the Settlement Class List, including all individuals residing in the United States who were sent a notification by RPM that their Personal Information was potentially compromised in the Data Incident." Settlement Agreement ("S.A.") ¶ 43.[2] The California Settlement Subclass is defined as: "the persons who

---

[2] A copy of the Settlement Agreement is attached to this Motion.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

are members of the Settlement Class who are residents of the state of California."[3] *Id.* ¶ 4. Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) RPM, its subsidiaries, parent companies, successors, predecessors, and any entity in which RPM or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id.* ¶ 43.

**B.     Settlement Benefits – Monetary Relief**

The Settlement negotiated on behalf of the Class consists of a $5,600,000.00 non-reversionary Settlement Fund from which class members may make a claim for: (1) reimbursement of Out-of-Pocket Losses; (2) Attested Time; and (3) credit monitoring. Additionally, members of the California Settlement Subclass may submit a claim for a California Statutory Damages Payment.

1.     <u>Out-of-Pocket Losses Reimbursement</u>

The first category of relief provides reimbursement for costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident. *Id.* ¶ 56. Specifically, this category of reimbursements includes: (i) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; (ii) costs incurred on or after April 8, 2021, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit

---

[3] The Settlement Class and the California Settlement Subclass are referred to herein as the "Class."

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

reporting agency; and (iii) other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id.*

       2.   <u>Attested Time Reimbursement</u>

The second category provides reimbursement for Attested Time up to four (4) hours at Twenty-Five Dollars ($25.00) per hour rounded to the nearest whole hour. *Id.* ¶ 58. Settlement Class Members can receive reimbursement of Attested Time with a brief description of the actions taken in response to the Data Incident and the time associated with each action. *Id.*

       3.   <u>California Statutory Damages Payment</u>

In addition to the monetary relief made available to Settlement Class Members above, all California Settlement Subclass Members may submit a claim for a California Statutory Damages Payment in the presumptive amount of $50.00. *Id.* ¶ 62.

**C.    Settlement Benefits – Credit Monitoring**

All Settlement Class Members are eligible to enroll in three (3) years of three-bureau Credit Monitoring Services provided by Kroll Settlement Administration LLC or other comparable provider, regardless of whether the Settlement Class Member submits a claim for reimbursement of Out-of-Pocket Losses, Attested Time, and/or a California Statutory damages Payment. *Id.* ¶ 61. All claimants who timely activate the credit monitoring service will receive it for a period of three (3) years from the date of activation, including daily three-bureau credit monitoring, identity restoration services, and $1 million in identity theft insurance, among other features. *Id.*

**D.    Pro-Rata Contingencies and Residual Distributions**

If the funds remaining in the Residual Settlement Fund are not sufficient to pay the total amount of all Approved Claim for Out-of-Pocket Losses, Attested Time, and California

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  Statutory Damages Payments, then the amount of the Approved Claims will be decreased on a

2  *pro rata* basis. *Id.* ¶ 70. However, if there are funds remaining in the Residual Settlement

3  Fund, all Settlement Class Members who filed and Approved Claim for Credit Monitoring

4  Services will receive additional years of Credit Monitoring Services, up to a total of five (5)

5  years. *Id.* ¶ 71(a). Moreover, if there are funds remaining in the Residual Settlement Fund

6  after payment for Residual Credit Monitoring Services, all Settlement Class Members who

7  filed an Approved Claim will receive a Residual Cash Payment of up to $100.00. *Id.* ¶ 71(b).

8  **E.     Class Notice and Settlement Administration**

9  Notice will be paid from the Settlement Fund and has been designed to reach the

10  greatest number of Settlement Class Members practicable. *Id.* ¶ 54. Within ten (10) days after

11  the date of the Preliminary Approval Order, RPM will provide the Settlement Class List to the

12  Settlement Administrator. *Id.* ¶ 74. Within forty (40) days of the Preliminary Approval Order, a

13  Short Form Notice will be sent to Settlement Class Members via email where applicable, and

14  via U.S. Mail where no email is available. A Long Form Notice and Claim Form will be

15  available to Settlement Class Members on the Settlement Website, which will be established as

16  soon as practicable following entry of the Preliminary Approval Order. *Id.* ¶¶ 48, 74.

17  **F.     Attorney's Fees and Expenses**

18  Upon preliminary approval of the Settlement, and no later than 30 days before the

19  objection deadline, proposed Class Counsel will file a motion for an award of attorneys' fees

20  and costs not to exceed thirty percent (30%) of the Settlement Fund, or $1,680,000.00. *Id.* ¶ 94.

21  **G.     Service Awards to Named Plaintiffs**

22  Plaintiffs in this case have been crucial to the litigation of this matter, sacrificing their

23  privacy and providing important information about the impact of the Data Incident to proposed

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT- 8
Case No. 2:22-cv-01683-RSM

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   Settlement Class Counsel. Joint Decl. ¶ 52. Upon preliminary approval, and along with their

2   motion for an award of attorneys' fees and costs, Class Counsel will seek service award

3   payments not to exceed $2,500 for each of the Class Representatives in recognition for their

4   contributions to the Action, for a total of $10,000.00, subject to Court approval. S.A. ¶ 92. The

5   Service Award Payments will be made from the Settlement Fund, paid by the Settlement

6   Administrator. *Id.*

7   **H.      Release**

8       Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be

9   deemed to have "released, acquitted, and forever discharged Defendant and each of the

10  Released Parties from any and all Released Claims." S.A. ¶ 89. "Released Claims" are defined

11  as "any and all claims, liabilities, rights, demands, suits, actions, causes of action, obligations,

12  damages, penalties, costs, attorneys' fees, losses, and remedies of every kind or description –

13  whether known or unknown (including Unknown Claims), existing or potential, suspected or

14  unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory or equitable –

15  that the Releasing parties had or have that have bene or could have been asserted in the Action

16  arising from the Date Incident." *Id.* ¶ 32.

17              **V.   LEGAL STANDARD**

18      Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which

19  court approval is required to finalize a class action settlement. Courts, including those in this

20  Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary

21  approval of the proposed settlement followed by (2) dissemination of court-approved notice to

22  the class and (3) a final fairness hearing at which class members may be heard regarding the

23

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1  settlement and at which evidence may be heard regarding the fairness, adequacy, and

2  reasonableness of the settlement. Manual for Complex Litigation (Fourth) (2004) § 21.63.

3  Here, Plaintiffs request the Court grant preliminary approval of the proposed

4  Settlement.

## VI.  ARGUMENT

6  Federal courts strongly favor and encourage settlements, particularly in class actions

7  where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm

8  any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955

9  F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements,

10  particularly where complex class action litigation is concerned"); 4 Newberg on Class Actions

11  § 11.41 (4th ed. 2002) (citing cases). Forcing claims like those at issue here to be handled

12  through individual litigation would unduly tax the court system, require massive expenditures

13  of resources, and would be impracticable given the relatively small value of the claims of the

14  individual class members. Thus, the Settlement provides the best vehicle for Settlement Class

15  Members to receive the relief to which they are entitled in a prompt and efficient manner.

16  The Manual for Complex Litigation (Fourth) advises that in cases presented for both

17  preliminary approval and class certification, the "judge should make a preliminary

18  determination that the proposed class satisfies the criteria." § 21.632. The court's evaluation of

19  certification in the context of a settlement is somewhat different than in a case that has not yet

20  settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's

21  review of certification of a settlement-only class is lessened: as no trial is anticipated in a

22  settlement-only class case, the case management issues inherent in the ascertainable class

23  determination need not be confronted. *See id*. Other certification issues, however, such as

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT- 10
Case No. 2:22-cv-01683-RSM

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

"those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.

Plaintiffs here seek certification of a Settlement Class consisting of: "the persons who are identified on the Settlement Class List, including all individuals residing in the United States who were sent a notification by RPM that their Personal Information was potentially compromised in the Data Incident." S.A. ¶ 43. The Settlement Class contains 3,766,573 individuals. Additionally, Plaintiffs seek certification of a California Settlement Class consisting of: "the persons who are members of the Settlement Class who are residents of the state of California." *Id.* ¶ 4.

For the reasons set forth below, the Court should certify the Class for settlement purposes and preliminarily approve the Settlement.

## A. The Settlement Satisfies Rule 23(a)

Before assessing the parties' settlement, the Court should first confirm the underlying settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for Complex Litigation (Fourth), § 21.632. These requirements are: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

### i. The Settlement Class is sufficiently numerous.

While there is no fixed point at which the numerosity requirement is met, Courts find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge and

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT- 11
Case No. 2:22-cv-01683-RSM

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-*

2  *Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Generally, Courts will find

3  numerosity is satisfied where a class includes at least 40 members. *Rannis v. Recchia*, 380 Fed.

4  App'x 646, 651 (9th Cir. 2010). The proposed Settlement Class, numbering over 3.7 million

5  individuals, easily satisfies Rule 23's numerosity requirement. Joinder of so many individuals

6  is impracticable, therefore the numerosity prong is satisfied.

7      The California Settlement Class also satisfies the numerosity requirement. Numbering

8  372,045 individuals, joinder is impracticable and the numerosity prong is satisfied.

9          ii.   The Settlement Class satisfies the commonality requirement.

10     The Settlement Class also satisfies the commonality requirement, which requires that

11  class members' claims "depend upon a common contention," of such a nature that

12  "determination of its truth or falsity will resolve an issue that is central to the validity of each

13  [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in

14  most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying

15  the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig*.,

16  2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). For the same reason, Plaintiffs allege that

17  predominance is readily met here "where the class is a 'cohesive group of individuals [who]

18  suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Hyundai*

19  *& Kia Fuel Economy Litig*., 926 F.3d 539, 559 (9th Cir. 2019). Thus, common questions

20  include whether RPM engaged in the wrongful conduct alleged; whether Class Members' PII

21  was compromised in the Data Incident; whether RPM owed a duty to Plaintiffs and Class

22  members; whether RPM breached its duties; and whether RPM unreasonably delayed in

23  notifying Plaintiffs and class members of the material facts of the Data Incident.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT- 12
Case No. 2:22-cv-01683-RSM

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

The same common questions apply to Plaintiff Woodruff and the California Settlement Class. Determining the truth of the common questions will resolve the issues of both the named Plaintiff and the Class, therefore both the Settlement Class and the California Settlement Class have met the commonality requirement of Rule 23(a).

iii.  Plaintiffs' claims are typical to those of the Settlement Class

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on RPM's alleged failure to protect Plaintiffs' and Class members' PII, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Associates*, 707 F.3d 1036, 1041–42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their PII was compromised, and that they were therefore impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

Similarly, the claims of Plaintiff Woodruff, which are based on RPM's failure to implement and maintain reasonable security procedures and prevent the Data Incident are the same claims of the California Settlement Class. Therefore, typicality has been met for the Settlement Class and the California Settlement Class.

iv.  Plaintiffs have and will continue to adequately protect the interests of the Class.

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Here, Plaintiffs have no conflicts of interest with other Class members, are subject to no unique defenses, and they and their counsel have and will continue to vigorously prosecute this case on behalf of the Class. Plaintiffs are members of the Class who experienced the same injuries and seek, like other Class Members, compensation for RPM's data security shortcomings that led to the Data Breach and caused them injury. As such, their interests and the interests of their counsel are not inconsistent with those of other Class Members. Similarly, Plaintiff Woodruff experienced the same injuries and seeks the same compensation as the members of the California Settlement Class.

Further, counsel for Plaintiffs are qualified, experienced, and able to prosecute this litigation. Settlement Class Counsel have a wealth of experience in litigating complex class action lawsuits similar to this one and have extensive knowledge of the applicable law and sufficient resources to commit to the Settlement Class. The experience of Proposed Settlement Class Counsel—Bryan L. Bleichner of Chestnut Cambronne PA, John A. Yanchunis of Morgan & Morgan, and Kaleigh N. Boyd of Tousley Brain Stephens, PLLC—is more fully set forth in the Joint Declaration of Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval. Joint Decl., ¶¶ 42–51. Therefore, the adequacy prong has been met for both the Settlement Class and the California Settlement Class.

**B.      The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1  predominate over any questions affecting only individual members and class resolution is

2  superior to other available methods for a fair and efficient resolution of the controversy. *Id.*

3       Rule 23(b)(3) requires that a district court determine that "a class action is superior to

4  other available methods for the fair and efficient adjudication of the controversy." In

5  determining whether the "superiority" requirement is satisfied, a court may consider: (1) the

6  interest of members of the class in individually controlling the prosecution or defense of

7  separate actions; (2) the extent and nature of any litigation concerning the controversy already

8  commenced by or against members of the class; (3) the desirability or undesirability of

9  concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely

10  to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

11       The predominance requirement "tests whether proposed classes are sufficiently

12  cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing Wright,

13  et al., Fed. Prac. & Proc. § 1777, 518–19 (2d ed. 1986)). "If common questions 'present a

14  significant aspect of the case and they can be resolved for all members of the class in a single

15  adjudication,' then 'there is clear justification for handling the dispute on a representative rather

16  than on an individual basis,' and the predominance test is satisfied." *See Hanlon*, 150 F.3d at

17  1022. To satisfy this requirement, "common issues need only predominate, not outnumber

18  individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013)

19  (quotations omitted).

20       Here, the Plaintiffs' claims depend on whether RPM owed and breached a duty to

21  adequately safeguard their PII. This question can be determined, for settlement purposes, using

22  the same evidence for all Settlement Class and California Settlement Class Members. This is

23  precisely the type of predominant question that makes a class-wide settlement worthwhile. *See,*

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

*e.g., Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .") (citation omitted).

Class certification here is also "superior to other available methods for . . . fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(a)(4). Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. Adjudicating individual actions here is impractical: the likely recovery for individual class members is small, the technical issues involved are complex, and the required expert testimony and document review is costly. *See Just Film*, 847 F.3d at 1123; *Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

Because Plaintiffs seek to certify a class in the context of a settlement, this Court need not consider any possible management-related problems as it otherwise would. See *Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no one member of the class has an interest in controlling the prosecution of this action because Plaintiffs' and Class Members' claims are the same. Alternatives to a class action are either no recourse for millions of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. Class-wide resolution is the

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

only practical method of addressing the alleged violations at issue in this case. There are millions of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Las Vegas Sands, Inc.*, 244 F.3d at 1163 ; *Wolin*, 617 F.3d at 1175 ; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (the class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency"). A class action is therefore superior to other methods for the fair and efficient adjudication of the claims of Plaintiffs and the Class.

## C.  The Settlement Should be Preliminarily Approved Pursuant to Rule 23(e)

In order for the court to preliminarily approve a class settlement and to direct that notice be sent to class members, the parties must show that the court "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). *Tuttle v. Audiophile Music Direct Inc.*, No.C22-1081JLR, 2023 WL 3318699, at *3 (W.D. Wash. May 9, 2023). Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Moreover, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." If the parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Thus, notice should be given to the class, and hence preliminary approval should be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. *Id.*

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT- 17
Case No. 2:22-cv-01683-RSM

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

As a general matter, preliminary approval is appropriate if the settlement falls within the range of possible approval. *Hunichen v. Antonomi LLC*, No. C19-0615-RAJ-SKV, 2021 WL 5854964, at *4 (W.D. Wash. Nov. 12, 2021). In sum, "the purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). In any event, while a complete fairness evaluation is unnecessary at this early juncture, Plaintiffs' and their counsel strongly believe that the resolution reached here is in the Settlement Class's best interests and fully endorse the Settlement.

To that end, the Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026. Rule 23(e) requires a court to consider several additional factors, including that the proposed class representatives and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an

**Tousley Brain Stephens PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

overriding public interest in settling and quieting litigation. This is particularly true in class action suits . . .”). Here, the relevant factors support the conclusion that the negotiated settlement—overseen by a respected neutral mediator—is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1. The Strength of Plaintiffs' Case

Plaintiffs maintain that they have established a strong case for RPM's liability, such that RPM had a duty to protect the PII of Plaintiffs and the Class, breached that duty by failing to adequately safeguard it, and caused cognizable harms. *See, e.g.*, *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 650 (N.D. Cal. 2020) (“[T]ime and money [plaintiff] spent on credit monitoring in response to the Data Breach is cognizable harm to support her negligence claim”); *Krefting v. Kaye-Smith Enter. Inc.*, 2023 WL 4846850 (W.D. Wash. July 28, 2023) (denying motion to dismiss claims for negligence and under the Washington Consumer Protection Act arising out of a data breach); *Guy v. Convergent Outsourcing, Inc.*, 2023 WL 4637318 (W.D. Wash. July 20, 2023) (same); *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *8–15 (S.D.N.Y. Mar. 23, 2021) (upholding data breach claims for negligence, breach of implied contract, breach of confidence, and violations of New York General Business Law); *Burrows v. Purchasing Power, LLC*, 2012 WL 9391827, at *6 (S.D. Fla. Oct. 18, 2012) (upholding data sharing claims for violations of Florida Deceptive and Unfair Trade Practices Act).

However, data breach litigation remains uncertain and evolving, meaning there is no guarantee that Plaintiffs will prevail on the merits. *See Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (citing *Gordon v. Chipotle Mexican Grill, Inc*., 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) (“Data breach cases . . . are particularly risky, expensive, and complex.”)). Plaintiffs recognize that while data breach litigation is turning in

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT- 19
Case No. 2:22-cv-01683-RSM

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

their favor as courts observe the concrete impacts that data breaches have, it remains lengthy, complex and difficult, and the novel claims that they bring do not have certain outcomes. Given these uncertainties, the benefits provided herein favor preliminary approval of the Settlement.

2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Although Plaintiffs believe their case is strong, the inherent risks of complex litigation remain present. Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is an especially complex class in an especially uncertain arena. Historically, data breach cases have faced substantial hurdles in surviving even the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1–2 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar, wide-spread notoriety have been found wanting by trial courts (albeit reversed by appellate courts). *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

Although the Plaintiffs are confident that their damages methodologies are sound, the fact remains that the evolving field of data breach class actions leaves uncertainty when these facts are tried to a jury. Without settlement, Plaintiffs may recover nothing for the harms that they have suffered, as each of the risks associated with this form of complex litigation could prevent the case from proceeding. As with all litigation, it is "always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Further, here there was an amplified risk that, even if Plaintiffs achieved certified classes and secured a judgment against RPM after protracted litigation, that judgment would not be collectible. *See* Smith Decl. ¶¶ 8–12. Therefore, this factor favors approval.

### 3. The Risk of Maintaining Class Action Status Through Trial

The Court has not yet certified any class treatment of this case, and if Plaintiffs were to proceed to litigate their claims through trial, RPM will certainly oppose certification. Because of this, the Plaintiffs risk obtaining and maintaining certification of the class and "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, 2014 WL 12746376, at *10 (C.D. Cal. Sept. 24, 2014). While Plaintiffs are confident that this case is well suited for class certification, numerous obstacles to certification remain. Few data breach cases have proceeded forward to obtain a ruling certifying a contested class. The first to obtain certification was *Smith v. Triad of Ala., LLC*, No. 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017), and a more recent certified contested class, *In re Marriott International Customer Data Securities Breach Litigation*, 341 F.R.D. 128 (D. Md. 2022), was recently decertified on appeal, *see In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023). The lack of direct precedent adds to the risks posed by continued litigation, therefore this factor favors approval.

### 4. The Amount Offered in Settlement

In light of the risks and uncertainties presented by data breach litigation, the value of the Settlement favors approval, as it makes significant relief available to Settlement Class Members from a $5,600,000.00 Settlement Fund. Each Class Member may submit a claim for reimbursement of Out-of-Pocket Losses that are fairly traceable to the Data Incident, as well as up to $100 in reimbursement for Attested Time. Further, California Settlement Class Members may submit claims for a California Statutory Damages Payment of $50. Finally, all Settlement

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT- 21
Case No. 2:22-cv-01683-RSM

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Class Members are eligible to enroll in three years of credit monitoring services, including benefits such as identity restoration services and $1 million in identity theft insurance. This settlement is a strong result for the class, as it helps address Class Members' prior injury while helping them to secure their PII. It is also within the realm of reasonable, approved settlements in other data breach cases. *See, e.g.*, *Dickey's Barbeque Restaurants, Inc*., No. 20-cv-3424 (N.D. Tex.), Dkt. 62 (data breach class action involving more than 3 million people that settled for $2.3 million); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (79 million people that settled for $115 million); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811 (N.D. Cal. July 22, 2020) (data breach class action involving more than 194 million people that settled for $117.5 million).

As set forth above, there was significant risk that even if the Class were to secure a judgment against RPM, any such judgment would not be collectible. RPM's only major asset was insurance proceeds potentially applicable to this case—and those proceeds are eroded by the costs of defending this action. Joint Decl., ¶¶ 14–16. Because of the difficulties that Class Members would face litigating each of their claims individually, not to mention subsequent attempts to collect on those claims, and this settlement is similar to other settlements reached in similar cases, this factor reflects that the Settlement is fair and favors approval. *See Calderon v. Wolf Firm,* 2018 WL 6843723, at *7–8 (C.D. Cal. Mar. 13, 2018) (comparing class settlements). Therefore, this factor favors approval, as the Settlement is an excellent result.

     5.   The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Even where formal discovery has not been conducted, this factor weighs in favor of approval where,

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

"[p]rior to engaging in settlement negotiations, the parties [] had full understanding of their positions and views of the case, and were able assess the benefits of a potential settlement." *Hanson v. MGM Resorts Int'l*, 2018 WL 3630284, at *5 (W.D. Wash. July 31, 2018). Similarly, where settlement was reached "after several rounds of arm's-length negotiations," approval is warranted. *Id.* Here, Plaintiffs' counsel and RPM engaged in significant pre-mediation discovery that allowed Plaintiffs' counsel to evaluate the strengths, potential weaknesses, and value of this case, as well as RPM's ability to pay. Joint Decl. ¶ 8. Additionally, Plaintiffs' counsel conducted significant investigation into the publicly available facts about the Data Incident and into the Plaintiffs' claims for purposes of drafting the Consolidated Complaint and Amended Consolidated Complaint. *Id.* ¶¶ 5–7. And finally, the Settlement was not reached until after a full day mediation and many months of subsequent negotiations. *Id.* ¶¶ 10–13.

### 6.   The Experience and Views of Counsel

Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Joint Decl. ¶¶ 39–51. Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel endorse the Settlement without reservation. *Id.* great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton v. Maximus, Inc.*, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

### 7.   Governmental Participants

There is no governmental participant in this matter. This factor is neutral.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

8. <u>The Reaction of the Class Members to the Proposed Settlement</u>

Because notice has not yet been given, this factor is not yet implicated; however, Plaintiffs support the Settlement. Joint Decl. ¶ 52.

9. <u>Lack of Collusion Among the Parties</u>

The parties did not reach the Settlement until after a full day mediation presided over by retired judge, Hon. Wayne Andersen of JAMS, which was followed by months of subsequent arms'-length negotiations. The Settlement was also the result of a mediator's proposal, thus assuaging any concerns of collusion. *See G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted); *see also Cohorst v. BRE Props.*, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness . . . We put a good deal of stock in the product of arms-length, non-collusive, negotiated resolution.").

10. <u>The Settlement Treats Settlement Class Members Equitably</u>

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT- 24
Case No. 2:22-cv-01683-RSM

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

segments of the class." *Paredes Garcia v. Harborstone Credit Union*, 2023 WL 4315117, *5 (W.D. Wash. July 3, 2023) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement does not improperly discriminate between any segments of the class, as all class members are entitled to the same relief, with the exception of the California Settlement Class, who have the opportunity to submit a claim for a California Statutory Damages Payment. Although Class Members will receive differing payouts depending on whether they are a member of both the Settlement Class and the California Settlement Class or only the Settlement Class, this difference in treatment is appropriate and reasonable. *S.C. v. Buddi US LLC*, 2024 WL 1459808, at *8 (C.D. Cal. Apr. 1, 2024) (holding that the differing payouts depending on whether they are a member of both the settlement class and California subclass or only the settlement class is appropriate and reasonable); *see also Carter v. Vivendi Ticketing United States LLC*, 2023 WL 8153712, at *11 (C.D. Cal. Oct. 30, 2023); *Weiner v. Ocwen Fin. Corp.*, 2024 WL 1257261, at *11 (E.D. Cal. Mar. 25, 2024). Following preliminary approval, Class Counsel will file a motion seeking service award payments for Class Representatives for up to $2,500. This payment is in line with awards granted in similar cases, is presumptively reasonable, and does not call into question Plaintiffs' adequacy or the validity of the Settlement. *See, e.g., Roe v. Frito-Lay, Inc.*, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (noting a $5,000 Service Award is presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015) (approving service awards of $5,000).

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

**D.      The Court Should Approve the Proposed Notice Program**

Rule 23 requires that prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.*

Such notice must be the "best notice practicable," see Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). Notice is adequate if it generally describes the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Id.*

Following preliminary approval, RPM will provide the Settlement Class List to the Settlement Administrator, who will in turn disseminate a Short Form Notice to the members of the Settlement Class via email where available and via U.S. Mail where no email is available S.A. ¶ 74. A Long Form Notice and Claim Form will be made available to Settlement Class

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Members on the Settlement Website, which will be established by the Settlement Administrator as soon as practicable following entry of the Preliminary Approval order. *Id.* The Settlement Website will also contain information including the Settlement Agreement, Plaintiffs' Motion for preliminary approval, the Preliminary Approval Order, Plaintiffs' motion for an award of attorneys' fees, costs, and expenses, and/or service awards, the operative complaint, and other important documents like the Court-approved notices. The Settlement Website will also include a toll-free telephone number, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. *Id.* ¶ 48.

The notice plan ensures that Settlement Class Members' due process rights are amply protected, and it should be approved. *See Hartranft v. TVI, Inc.*, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019) ("The Court finds that the Class Notice and the manner of its dissemination . . . constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the Settlement Class."); *see also Spencer v. #1 A LifeSafer of Ariz., LLC*, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (preliminarily approving class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights").

## E. Appointment of the Settlement Administrator

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request the Court appoint Kroll Settlement Administration, LLC to serve as the Claims Administrator. Kroll is a well-respected third-party administrator with a trusted and proven track record of supporting class action administrations.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT- 27
Case No. 2:22-cv-01683-RSM

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**F.    Appointment of Settlement Class Counsel**

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel have extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Joint Decl., ¶¶ 39–51, Exhibits A–C (firm resumes). Accordingly, the Court should appoint Bryan L. Bleichner of Chestnut Cambronne P.A., John A. Yanchunis of Morgan & Morgan Complex Litigation Group, and Kaleigh N. Boyd of Tousley Brain Stephens, PLLC as Class Counsel.

## VII.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that will provide Class Members with both significant monetary and equitable relief. The Settlement should be approved and Notice should be ordered to issue to the Settlement Class. For all the above reasons, Plaintiffs respectfully request this Court grant Plaintiffs' Motion.

I certify that this memorandum contains 8,226 words, in compliance with the Court's Order Granting Plaintiffs' Unopposed Motion for Leave to File Overlength Briefs, Dkt. 66.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT- 28
Case No. 2:22-cv-01683-RSM

**Tousley Brain Stephens PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

DATED this 17th day of July, 2024.

TOUSLEY BRAIN STEPHENS PLLC

By: *s/Kaleigh N. Boyd                /*
Kaleigh N. Boyd, WSBA #52684
Jason T. Dennett, WSBA #30686
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101-3147
Tel: (206) 682-5600
Fax: (206) 682-2992
kboyd@tousley.com
jdennett@tousley.com

*Interim Liaison Counsel*

Bryan L. Bleichner*
Philip Krzeski*
CHESTNUT CAMBRONNE PA
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Tel: (612) 339-7300
Fax: (612) 336-2940
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

John A. Yanchunis*
Ryan J. McGee*
MORGAN & MORGAN COMPLEX
BUSINESS DIVISION
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

*Interim Co-Lead Counsel*

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT- 29
Case No. 2:22-cv-01683-RSM

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992